Judge Mills
delivered the opinion.
This is an ejectment brought by John L. May on his Separate demise, and Daniel Eppes and Polly his wife, late Polly May, on their separate demise to the nominal plaintiff On the trial in the court below, the appellants, *506 who were lessors of the plaintiff, gave in evidence’á patient ,0 John May, dated in December, 1735, and proved ft at' its boundaries included the residence of tbtr appellee, Slaughter — and that John May was killed by the savages in March or April, 1790, on the Ohio at the mouth of the Sciota, and that the lessors of the plaintiff were bis only children and heirs at law, and here the appellants rested their proof.
The appellee,- then defendant, gave in evidence a survey made the 13th of Nov. 1787, and a patent dated the 20th January, 1792, in the name of Mamie Brady, cover■‘ing the residence of the appellee, and proved his entry claiming the one half of said patent, by metes and bounds, just before Christmas, 1787, and a continued possession ever since ; said entry being made in pursuance of a contract with Mamie Brady, the patentee for half the land, Which contract was completed by a conveyance on the 30th Dec. 1800 And he also proved that John May was in the then district of Kentucky, in 1787, 1788 or 1789, altho’ he resided in, and was a citizen of Chesterfield county, Virginia.
To rebut this evidence, the appellants proved that they were infants at the deajh of their ancestor and that John L May was born in 1784 or 1785, and Polly Eppes on the 18th July, 1788, and intermarried with her co-lessor, Daniel Eppes, on the 25fh July, 1810 — That Anne May, the widow of said John May, married Thomas Lewis, in February, 1797, and died, during her coverture, in September, 1811, leaving thelessorsof the plaintiff his heirs at law. That said widow and lessors continued to reside iu Virginia, the said widow, till her death — Polly Eppes to the time of the trial, and John L, May until he came to Kentucky, in 1806, where he has since remained, except that he went once or twice back to V irginia, and again returned ; and that in the year 1816, he declared he would go to Virginia to renew his residence there, and while there, on that occasion, he became the deputy clerk of a county court. The lessors of the plaintiff read the will of John May, which has been heretofore noticed,, by this court, in the case of Baird, &c. vs. Rowan. 1 Marsh. 252. By the certificates en the will it appeared that it was proved and recorded in the court of Chesterfield county, Virginia, on the 10th of Nov. 1791. That in November following, none of the executors having qu4l- *507 ifed, administration was first committed to the sheriff, by virtue of his office. At September court, 1795, admiois-tralion, with the will annexed, was committed to David Ross. At the July court, 1797, after the intermarriage of Mrs. May with'Lewis, Ross surrendered Ins letters of administration, and Mrs. Lewis named a§ executrix in the will, took upon her the burden of tbe execution of the will in due form ; and she appears to be tbe only one of the executors who ever acted.
Tbestatute of,umta$ons a .citizen^f Virginia,who afterthe ad-vfsitedThís country,such entry being composed a: P»r* of Vir-glnia‘ r
After this evidence .various instructions were moved for, in the court below, by each party ; the plaintiff below con* tending, that under tbe circumstances of this case, the right of entry was not tolled before the bringing of this , action at the close of the year 1815, or at all events, that Mrs. Eppes might recover : And the defendant,bfclow ¡contending that both were barred. The court belpw deeded# in favor of the appellee, and the jury found accordingly ; and the lessors of the plaintiff in that court appealed. It will be unnecessary to repeat the different points made in that court, in the order and turns in which they were * made. They all may be comprehended in the following .questions, which have been debated in'this court.
1. Did the statute of limitations begin to run, in the present case, against John May, in tiis lifetime ?
2. If it did, was the operation of the statute affected by his death, so as to prevent the bar from operating against the lessors of the plaintiff: or whether any and what estate passed by his will, and what would be the effect of the statute against the right of entry, suppose the estate to have passed by the will ? ⅜
We have no doubt, assuming tbe facts as true,, that the statute commenced running against John May in his life time. At the separation of this slate from Virginia, we made the statute of that state ours, by adoption, and in its turns it then applied to the limits of this state, .which were the former limits of the district, and its expressions were retrospective, as to all previous as well as subsequent entries apon land, so that by the .separation of the two states, the effect of the statute did riot cease. John May having been in the limits of the district, after the adverse entry and possession of the appellee, the statute attached and took effect against him, altho’ his residence was not within the district, as was decided by this court ⅛ the ease of Smith vs. Hanon. 3 Bibb 440.
The words used in the stat. of wills, of “possession, reversion orremainer,” are to be construed as de script ive ot the nature of the estate to be devised, and not the particular situation there oían entry or patent is de-visable, nor will the intrusion of a stranger affect the power to devise it.
But it is contended that ahho’ th* sO'Ute attached, its operation ceased agamst the infant heirs ot May. at his death, as vt as decided in the e ase of Mackie. &c. vs. May’s heirs 4 Bibb 43. And Senieny vs. Overton 4 Bibb 446. On the other side it -has bteu earnest.¡y con-tencVd that the cases last recited cannot be supported upon principle, and the court has been seriously urged.tr. revise the doctrine adopted ill these decisions. Before we attempt a revbw of these cases, or admit the necessity of doing jo, we will enquire, whether lb" circuit stances of this ease requires such a reviere, or in other words, whether May’s heirs, under the lads and circumstances now developed in proof, can be aided by the principle settled in these cases, howevei valid that principle may be.— This leads us to the second enquiry, proposed ; what estate did the will pass, to whom and when, and what is the effect of the statute, considering the will to have its operation upon the title ? Here it is urged that no title passed by the will, because the land now' in question is shewn to have been in the adverse possession of another, at the death of tile testator as well as at the making of the will, and that the Virginia statute, under which the will Was made, like the statute of this state now in force, only authorized the testator to devise estates, held by him at bis death, “ in possession, reversion or remainder.” t his statute will admit of iwo constructions, either of which will allow the testator to devise this estate. The firs; of these constructions, is, that the testator was authorized to devise ^ all the estate, right, tille and interest in possession, reversion or remainder.” So that either a right, a title or an interest, held by the testator, at the lime of his death, might be devised, and such an interest he held in these lands, notwithstanding another had entered upon them.
But the second construction, of this statute, which is proposed is the correct one, and puls the matter beyond controversy. The words “ possession, reversion or remainder,” are used as descriptive of the nature of the estate to be devised, or of its tenure,) and not as describing the peculiar situation in which the land itself might be, with regard to intrusions upon it by strangers. The patent to May vested a present interest, from its date, and not an estate resulting to him upon a contingency, or to revert to him in remainder, after a particular estate was *509 terminated. The nature of the estate then, was an esr tale in possession, considered as opposed to future estates. Such an estate was contended to be described by the use *ot the words, “ in possession,”, instead of an intention to prevent and restrain the testator from devising the land, because of the entry of strangers. No doubt May could hate devised this land, if Slaughter bad never entered.— Could it then be the intention of the legislature that this power should be defeated by the entry of Slaughter, without bis consent, and, perhaps, without his knowledge ? It cannot be supposed that the power of devising was left to depend on such a contingency not dependent on the acts of the testator, nor arising out of the nature of the estate itself. YVe of course conclude that this estate, situated as it was, could be devised.
T*?e sia*niE vey¡ng pre. tensed titles p y
An estate (⅛ vis’dt© ex’rs. °r such as does mfv tuf that ev^nt occurs, until l!’e ii,le thetórs. **
ft is further contended that the statute of Virginia of 17 o, 2 Lift. obi), entitied, “an act against conveying or taking preter.ee titles, was in force when this will was made, and at the death of the testator ; and that this land being held adversely to May, it could not, consistently with this act, pass by the provisions of the will. The eb-ject of this act ivas to prevent the men: evidences of title, instead of land itself, being brought into market ; and the evils intended to be remedied by tfiis law, shew that it cannot apply to a devise of laud — or to a divisor, about to leave such estate as he held it to the objects of his bounty. A penalty is inflicted by tile act, which must be wholly inoperative upon the testator, who did not part with bis lands till death, and afterwards neither he nor his devisees could be subject to the penalty. We therefore conceive that the word “ convey,” used in this act, intended the passing of titles by conveyances, technically so called, and not wills, which are only jurist.conveyances, and are not properly desertbed by the terra conveyance ; and that the word “take” is just as broad as the word convey, and the taking prohibited, was the receiving of that which was not to be conveyed bv the terms of the act, and nothing more. This act then cannot restrain the operation of the will in question, and it could operate upon the land. The question then arises did it actually do so ? and when ?
It is decided in the case of Baird, &c. vs. Rowan, to which reference is had for the terms and some of the effects of this will, that the devise to his executors was ¡he Revise to the estate itself, and not the bare delegation of *510 a power over it ; but that this devise was contingent, and did not vest till the condition was performed. This condition was, the assumption of Uie burden of executing the will, by obtaining letters testamentary ; and that such of the executors as did so, alone could take under the will. None of them did so but Mrs. Lewis ; did she therefore take the estate ? We see no reason why she could not take, it is.true she did not do so, until 1797, and during the interim between the death of May and her adininistraiion, the title must have passed to the heirs at law. It is urged that Mrs. Lewis not having administered until after the separation of this state from Virginia, and this land being in Kentucky she could not take the estate. To this it may be answered that this land .vas not directed to pass by the laws of Virginia, but by the act of the íes* tator himself. The court, of the county of his residence, bad the jurisdiction of this matter, and could grant the letters testamentary. This jurisdiction, it is conceived, they still retain, so far as is necessary to permit the performance of the contingency, upon which the estate was to vest according to the testators directions. The executors named bad a contingent interest, which at any time they could make complete by performing the act of taking letters testamentary until the separation of the states; could this interest be defeated by that separation ? Whatever might have been the case, by the mere act of separation itself, all such interests were preserved by the express terms of the compact between the t wo states, and the executors had a right to administer, afterwards secured to them, and a right to take the estate according to the terms of the devise prescribed by the testator himself, and that, by doing so in the same court who bad the original jurisdiction over the will. It then follows, that Mrs. Lewis, on assuming the execution of the will in Virginia, did take the estate, in this country, according to the will, and held it in trust for the purposes in the will directed, especially as no limitation to time was fixed by the will itself. Accordant .with this is the decision of the supreme court of the United States in the case of Lewis and wife vs. M’Farland, 9 Cranch 151, with regard to this same will.
An executr’x to whom lands in Kry. is devi’d may qualify in Vir. and take the estate according to the will of the testator.
As the estate then passed to Mrs. Lewis and remained with her till her death in 1811, it remains 4o enquire, what was the effect of the statute of limitations on this es-late, in its various changes from May himself, first to hi», *511 heirs of necessity, until the contingency happened — then from the heirs to Mrs. Lewis, by operation of the will, and finally to the heirs at her death.
It is only ⅛ cases of descent to infants that the statute of limitations is check’d after it begins to run against the ancestor, no sucti privilege is extended to purchasers, as to them, the statute once attached continues to run notwithstanding disabilities.
It is contended, for the appellants, that as the estate descended to the heirs when infants, the statute ceased to operate, until the estate departed from them to Mrs. Lewis, and that this intervening period cannot be counted agreeably to the aforerecited cases of May &c. vs. Madin, and Sculney vs. Coatney. This court has never intended to decide, that time which did not run against an infant could not be counted against the same right of entry when passed to another, unless that passing was by operation of law, and not by purchase. It is true this court, under the peculiar phraseology of an act, has determined in the cases alluded to, that the expressions, “ accrued or coming to them,” referred to the right of entry itself passing to them and saved tbeir rights, alt ho’ the cause of action and invasion of that right accrued before. But the question still remains to be decided what kind of accruing or coming of title, or right of entry was within the saving of the statute. Is it trie passage of title by operation of law only in case of descent, or a transmission of the title by purchase — such as by conveyance or devise? it is a well settled principle, with regard to the statute of England, as well as in most of the American States, that if the statute once attached, it run against all intervening, and subsequently accruing disabilities. Such also has been the construction of the supreme court of the United States, with regard to our own act of assembly, arguendo in a Sate case.
It was with great reluctance that this court departed so far from this general, and indeed almost universal rule, and it was done only in obedience to the expressions of the statute in the case of heirs. We say of heirs, for it never has heen applied to cases of purchases. Against them the statute will run and ought to be permitted to run, notwithstanding the tit !e may have passed by devise or conveyance to a person or persons, subject to one or more of iIés disabilities within the saving of the statute. The wo* “ accrued or coming to them,” do not necessarily import a passing of title by act of the parties, but rather the contrary. It is those who take by descent alone whs caj$ claim these privileges and exemptions allowed by the aci. If a different construction should prevail, it would be in *512 the power of any holder of an estate, worthless at first, to save the operation of the sfalute by alienation, until its increased value might tempt the bolder to disturb the ignorant possessor, who in quiet and thoughtless enjoyment^ bad expended his money in purchasing and labor in improving the soil, whereby its value was enhanced.
A teststor, a-g:<.inst wii'.m the statute of limitations has commenced punning1, devising hi-estate in ip’s* to such of his ex’rs as shall act, the estate desc’nds to tiis heirs until the ex’r qualifies. & if t ose heirs are laboring under disabilities, the statute ceas’s to run ag’inst them, so long as they continue to hold the estate, Until those disabilities are removed, bu1 on the qualifying of an rx’tor the pfiv t’ge do’s not ext’iid to him, the statute shall be constpu'-'d as Tunning from the adverse entry.
But admitting cases of descent and not those of purchase, to come within the exceptions of the act, it is contended that as the estate fell to lessors, in this case, from the death of John May till his widow assumed the trust, of course they come within the rule, and must be exempted from the operation of the act. We are aware of no rule which allows fractions of a bar to be taken out of the computation of time, except those fractional periods which are directed to be deducted bv the act i’self If May’s heirs had kept the estate audit had never departed from them, until they arrived to full age, they then, with some plausibility, might have claimed the benefit of the construction of the act heretofore adopted by this court, and might have claimed a period after their disabilities were removed in which they could bring their action. But they did not keep the title — it departed from them ; not, it is true, bi their own así, bul by the express disposition of their ancestor, who ha I the right of directing that they uever should have any part of it. ft followed the directions of the will and went bv devise to their mother. Tee supreme court of the United States have said in the ease before quo’ed, that the title passed by granting of letters testamentary in Virginia, had relation to the death of the testator, if this case be true, in any respect, it must be so with regard to any in-cumbrances or impediments which existed in or over the estate at the time of the testators death. As to this tract of land, a bar bad commenced against the right of entry, and had progressed for at least tivo years before the death of May. When his devisee took it by administering, she took it cum onere, endangered by, and subject to the same bar, which progressed from 1787, and i! continued to progress till it was complete. We conceive that May did not intend to vest a fee simple in his executors, in their individual right, or such of them as should act ; but only to pass the title in trust for the purposes, first, of paying his debts — secondly, of paying a specific legacy to his mother — and lastly, to enable his executors to settle and *513 adjust controversies. After these directions are given, he adds this provision :
“ I further will and devise all the rest and residue of of my estate to my beloved wife, Anne May, my children, John and Polly, to be equally divided between them and their heirs.” He then proceeds to provide for the death of either of these devisees, and if they should all die, be directs the estate to pass to his brothers and sisters. This “ rest and residue,” we do not conceive to be what remained after the executors took all his lands, forever, but it includes the remainder of his lands as well as bis whole personal estate, after the executors should bave performed the trust by paying his debts — the legacy to his mother, and adjusted disputes. This construction of the will is strongly corroborated by the power given to his executors, in the following terms: “I do hereby empower my executors to do and act, in all cases respecting my lands, in as good and ample a manner as I, myself, could do — and give them the same powers respecting disputes about title — making divisions and conveyance — entering into compromises for the adjustment of disputes — making exchanges of any part of my properly ; and in all other cases to do and act in the same manner as if the property was their own and they were acting for themselves.”
This provision immediately precedes that made for his wife and children. It may be asked, why did he express such powers if they were not intended as directions how to execute the trust } Why give them directions if the land belonged to them absolutely, in which case they could have acted with the estate as they pleased ? Why say they “should do and act in the same manner as if the property was their own and they were acting for themselves,” if the property was, in fact, their own, and they were, in fact, managing their own interest ? We conceive it, therefore, clear, that the will gave the estate only m trust to his executors, aud what remained of it, after the trust was executed, was to pass to his wife and two children, by devise, as tenants in common, and that these children are bound to take it as devisees, and of course are subject to every bar to which it can be subject in the hands of devisees. If the mother, before her death, had completed the trust and assented to the devise, she became a tenant in common with her children. Tf she did not do so, it is not material to enquire whether each of *514 the children takes a third, by devise, from their father, anc' remaminS third as heirs of the mother, or whether the title of necessity, on the death of their mother, reverted to them as heirs of their father, as it did at his death and before her executorial character commenced. In either event the estate was held by the devise in the hands of the mother alone as trustee, or in her hands and those of the children as tenants in common by devise, and as it remained in this state till her death, the bar of twenty years ’had elapsed and was complete, conntiog from its commencement in the lifetime of May, and it continued to run over all disabilities of infancy and non residence in them, and coverture in Mrs. Lewis and Mrs. Eppes, because it was held by purchase and not by descent front the father. We do not conceive it necessary then to enquire further into the question whether Mrs. Lewis, as a feme covert trustee, could claim the privilege of coverture in any case where the bar commenced, while she held the estate. Certain it is, she could not do it in a case where she took a trust estate by purchase, against which the bar had commenced operation against the creator of that trust.
Pope, for appellant, Hardin, for appellee.
Nor is it necessary that we should decide the question which has been elaborately and ably discussed in the argument of this case, whether the coparcener, within the disabilities of the statute, can recover, when one or more of the coparceners are bound. As we conceive the bar, in this case, was complete before the death of Mrs. Lewis, it precludes the necessity of deciding this question, and renders it improper to do so, when the record presents no such case. We will barely remark that nothing said in the former opinion in this cause, on that subject, is to be considered as forming any precedent on, or affecting the point;
We therefore conclude that the court below did right in deciding that the lessors of the plaintiff were barred, if the proof was tr,ue, and this being the foundation of all the instructions given, and the reason why others were refused, there is no error in the judgment of that court.
The former opinion of this court must therefore be reversed and set aside, and the judgment of the court belofr affirmed with costs.